594 P.2d 1181

**NEW MEXICO HOSPITAL ASSOCIA-TION, Petitioner-Appellant,**

v.

**EMPLOYMENT SECURITY COMMIS-SION of New Mexico, Respondent-Appellee.**

No. 11753.

Supreme Court of New Mexico.

May 18, 1979.

Sutin, Thayer & Browne, LaFel E. Oman, Marianne Woodard, Albuquerque, for petitioner-appellant.

J. R. Baumgartner, Albuquerque, for respondent-appellee.

## OPINION

EASLEY, Justice.

The Employment Security Commission (ESC) issued a decision requiring members of the New Mexico Hospital Association (the Hospitals) to reimburse the New Mexico Unemployment Compensation Fund (the State Fund) for 100% of unemployment compensation paid to claimants for certain weeks during which the State Fund also received a 50% contribution from the Federal Unemployment Trust Fund (the Federal Fund). The District Court in Bernalillo County affirmed the ESC decision, and the Hospitals appeal. We affirm.

The issues raised are (1) whether the New Mexico Unemployment Compensation Act, §§ 51–1–1, *et seq.*, N.M.S.A.1978 (the State Act) is ambiguous and may be construed to require the Hospitals to reimburse the State Fund for only 50% of benefit costs during those periods when the Federal Fund contributes 50%; and (2) if the State Act cannot be so construed, whether the State Act conflicts with federal unemployment laws and regulations.

Under the State Act there are "contributing employers" and "reimbursing employ-

ers". Contributing employers are taxed to the State Fund according to the schedules set forth in § 51–1–11. Reimbursing employers (non-profit organizations) are allowed the option of paying, on a reimbursement basis, the amount of benefits actually paid to claimants. § 51–1–13. The Hospitals are reimbursing employers.

The Federal-State Extended Unemployment Compensation Act of 1970 (the Federal Extended Compensation Act) (compiled as §§ 201–207 following 26 U.S.C. § 3304, Vol. 7 U.S.C. 1976 ed. at 897–99), encourages participating states to provide extended benefits, up to 39 weeks, during certain defined periods of high unemployment (extended benefit periods). This is accomplished by contributions to the various state funds from the Federal Fund of 50% of the last 13 weeks of benefit costs during an extended benefit period, from week 27 through week 39.

At the time the Federal Extended Compensation Act was passed, the New Mexico Act provided for 30 weeks of regular unemployment compensation to claimants as compared with 26 weeks in most states. Under the ESC decision, the Hospitals were required to reimburse the State Fund for 100% of regular benefit costs (the first 30 weeks) and for 50% of extended benefit costs (weeks 31 through 39). Since the Federal contribution during an extended benefit period applies from weeks 27 through 39, the result of the ESC decision was that for weeks 27 through 30 the State Fund received 150% of benefit costs attributable to the Hospitals; 100% reimbursed by the Hospitals and 50% from the Federal Fund.

The Hospitals contend that the ESC ruling is inconsistent with the reimbursement concept. They urge us to construe the State Act to require reimbursing employers to pay to the State Fund only half the amount of any sharable compensation. This question is the first impression in the United States.

### Construction of the State Act

▇ Regular benefits are those benefits provided under § 51–1–4 for 30 weeks, and extended benefits are those benefits payable under § 51–1–48 during an extended benefit period to those claimants who have exhausted all their rights to regular benefits. Unless there is ambiguity in a statute, construction is uncalled for. *State v. Elliot*, 89 N.M. 756, 557 P.2d 1105 (1977); *Atlantic Oil Producing Co. v. Crile*, 34 N.M. 650, 287 P. 696 (1930). The State Act requires reimbursing employers to make payments in lieu of contributions in amounts equal to the full amount of regular benefits actually paid plus one-half of the amount of extended benefits. § 51–1–13. The alleged ambiguity is in the definition of what are "regular benefits" and "extended benefits". Are the amounts paid for weeks 27 through 30 regular or extended benefits? Particular attention must be paid to the emphasized portions of the following statutes.

Section 51–1–42, N.M.S.A.1978, provides:

As used in the *Unemployment Compensation Law* : (Emphasis added.)

. . . . .

B. "benefits" means the cash unemployment compensation payments payable to an eligible individual pursuant to Section 51–1–4, N.M.S.A.1978 . . . . .

Section 51–1–4(C), N.M.S.A.1978 provides for unemployment benefits to be paid to individuals for 30 weeks.

Section 51–1–48, which was enacted as an amendment to the New Mexico Unemployment Compensation Law to implement the federal program of extended benefits, provides:

Definitions; extended benefits.

A. *As used in this section*, unless the context clearly requires otherwise: (Emphasis added.)

. . . . .

(7) "regular benefits" means benefits payable to an individual under the *Unemployment Compensation Law* . . *other than extended benefits* ;

(8) "extended benefits" means benefits . . . payable to an individual under the *provisions of this section* for weeks of unemployment in his eligibility period. (Emphasis added.)

We find no ambiguity in the State Act regarding these definitions. It is clear that "extended benefits" are benefits payable "under the provisions of this section", § 51–1–48, and benefits payable under *other sections* of the Unemployment Compensation Law are "regular benefits". A claimant is eligible for "extended benefits" only after he has exhausted all his rights to "regular benefits that were available to him under the Unemployment Compensation Law". § 51–1–48(C).

### Constitutionality of the State Act

The Hospitals contend that, as interpreted by the ESC, the State Act conflicts with Federal Statutes and regulations.

#### a. *Federal Regulations*

■ The relevant Federal Regulation is 20 C.F.R. 615.12, which provides:

The State law shall require an employer to reimburse the State Fund for 50 per cent of any sharable compensation paid to an individual that is attributable under the State law to service with such employer if the employer . . . is reimbursing the State fund with respect to such service.

The Hospitals argue that this regulation means that the State shall require a reimbursing employer to reimburse *no more than 50%* of any sharable compensation. The language of the regulation, however, admits of no such requirement.

#### b. *The Federal Act*

The relevant Federal statutes were enacted by Titles I and II of Pub.L.No. 91–373 (1970). Title I (codified in scattered sections of 5, 15, 26 and 42 U.S.C.) amended certain sections of the existing Federal Act, and enacted a new section, 26 U.S.C. § 3309. Title II was the Federal Extended Compensation Act.

As originally enacted, the Federal Act did not provide unemployment compensation *for employees of non-profit hospitals*. Section 26 U.S.C. § 3306(c)(8) excludes from the definition of "employment", service for non-profit organizations such as the Hospi-

tals. Title I of the 1970 amendments brought those employees under the purview of the Act. 26 U.S.C § 3304(a)(6)(A) now requires states to provide compensation to claimants formerly employed in hospitals. Section 3304(a)(6)(B) now provides that these institutions be allowed to make reimbursing payments in lieu of contributions as provided in § 3309.

It is provided in the Federal Extended Compensation Act that:

State law shall provide that payment of extended compensation shall be made . . . to *individuals who have exhausted all rights to regular compensation under the State law* . . . . (Emphasis added.)

§ 202.

There shall be paid to each State an amount equal to one-half of the sum of—

(A) the sharable extended compensation, and

(B) the sharable regular compensation,

paid to individuals under the State law.

. . . . .

extended compensation paid . . . is sharable extended compensation to the extent that the aggregate extended compensation paid does not exceed the smallest of . . .

[(A) 50 per centum of the total amount of regular compensation . . . payable to him . . . ,

(B) thirteen times his average weekly benefit amount, or

(C) *thirty-nine* times his average weekly benefit amount, *reduced by the regular compensation paid* . . . (Emphasis added.)]

(c) [Sharable regular compensation] For purposes of subsection (a)(1)(B), regular compensation paid . . . is *sharable regular compensation —*

(1) if such week is in such individual's eligibility period . . . and

(2) *to the extent that the sum of* such compensation, plus the regular compensation paid . . . *exceeds*

*twenty-six times (and does not exceed thirty-nine times)* the average weekly benefit amount . . . for weeks of total unemployment payable to such individual *under* the *State law* . . . . (Emphasis added.)

§ 204.

■ From the above sections it appears that the Congress contemplated that the Federal Fund would share 50% of the costs of the last 13 weeks of benefits in an extended benefit period, regardless of whether those were termed "extended" or "regular" compensation under state law. The legislative history reflects this intention.

The Federal Government would pay one-half the cost of the extended unemployment compensation required under this title. Not to discourage States from providing regular compensation for longer than 26 weeks, the Federal Government would also pay one-half of regular compensation in excess of 26 weeks in a benefit year to the extent such regular compensation is paid during an extended benefit period.

H.R.Rep.No. 612, p. 30, 91st Cong., 1st Sess. (1969); *See* S.R.Rep.No. 752, p. 35, 91st Cong., 2nd Sess. (1970).

From the above sections, and the legislative history of those sections, it is clear that the Congressional intent was to allow the Federal Fund to share with the State Fund 50% of compensation paid from weeks 27 through 39 in an extended benefit period, whether those benefits were all "extended", or were part "regular" and part "extended" under the particular state law.

■ The Hospitals cite Congressional legislative history which indicates that, by providing the reimbursement plan for non-profit organizations and placing the costs of administering the program on contributing employers, it was the intention of Congress to allow these organizations to take part in the system at a minimum cost. The Hospitals argue that they should not now be required to make payments which act as a general subsidy to the system. This legislative history does not relate to the Federal Extended Compensation Act. That Act does not prohibit the states from requiring reimbursement by non-profit organizations of the full amount of "regular benefits" under State law. Indeed, Title I of Pub. L.No. 91–373, by enacting the new § 3309, appears to require the opposite.

Our review of the committee reports and of discussions on the floor of both houses indicates that, apparently, the Congress did not perceive this interaction between Titles I and II of Pub.L.No. 91–373.

Had the Congress considered the issue, they might have provided that non-profit organizations reimburse the various state funds for no more than 50% of any sharable compensation. However, reimbursing employers already benefit in that they do not share in the administrative costs of providing regular compensation to claimants, and, under the State Act, they receive the benefit of 50% of the cost of extended compensation for the last nine weeks. Both of these benefits are at the expense of contributing employers because the administration costs of the unemployment system and the Federal contributions during extended benefit periods find their source in the taxes imposed on contributing employers. 26 U.S.C. § 3301; 42 U.S.C. §§ 1101 to 1105. The Congress might well have intended not to extend any further benefits to reimbursing employers at the expense of contributing employers.

In construing a Federal Act to effectuate the Congressional purpose, courts must take care not to extend the scope, nor distort the ordinary meaning of the Statutes. *62 Cases of Jam v. United States*, 340 U.S. 593, 71 S.Ct. 515, 95 L.Ed. 645 (1951); *Hoffman v. Joint Council of Teamsters No. 38*, 230 F.Supp. 684 (N.D.Cal.1962). In construing State Statutes, this Court has held:

A statute must be read and given effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration.

*Burch v. Foy,* 62 N.M. 219, 223, 308 P.2d 199, 202 (1957). We have found no Federal cases construing Federal Statutes which provide a contrary rule where, as here, Congress apparently did not consider a possible effect which resulted from the Federal Statute.

We have found that the State Act is not ambiguous with regard to the definition of "regular" and "extended" benefits, and that the State Act is not in conflict with Federal statutes and regulations. The decision of the district court is affirmed.

IT IS SO ORDERED.

McMANUS, Senior Justice and FEDERICI, J., concur.